**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Patricia FOREMAN,**
**Defendant–Appellant.**

**No. 89–50038.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1989.

Decided June 19, 1990.

Carlton F. Gunn, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Jeffrey C. Eglash and Peter Morris, Asst. U.S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Before BROWNING, BOOCHEVER and REINHARDT, Circuit Judges.

BOOCHEVER, Circuit Judge:

■ Patricia Foreman challenges the district court's imposition of a two-level upward adjustment of offense level for "abuse of position of trust" pursuant to § 3B1.3 of the Guidelines.[1] We find that the adjustment was warranted and affirm the district court's decision.

## FACTS AND PROCEDURAL HISTORY

On July 20, 1988, Foreman was a Wellston, Missouri police officer. On that date she was questioned by Los Angeles Police Department officers and Drug Enforcement Agency agents in the Los Angeles International Airport after the officers observed what they considered suspicious behavior on her part. When they identified themselves and asked for her identification, she showed them her police badge and stated that she was an active police officer. The officers continued with their questioning and eventually arrested her for possession of a controlled substance.

---

**1.** Foreman also challenges the constitutionality of the Guidelines, claiming they violate due process by limiting the sentencing discretion of district courts and infringing defendants' rights to individualized sentences. We recently upheld the constitutionality of the Guidelines on these grounds in *United States v. Brady*, 895 F.2d 538 (9th Cir.1990). Foreman's constitutional challenge, therefore, is precluded by our decision in *Brady*.

Foreman was indicted August 5, 1988, and pled guilty on November 14, 1988, to one count of possession with intent to distribute 310 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) (1982). In determining her sentence under the Guidelines, the district court included a two-level upward adjustment for abuse of a position of trust, concluding that Foreman had "used her position as a police officer to attempt to dissuade the investigating officers from proceeding further with their investigation." The court concluded that her range of sentence was 33 to 41 months and found no basis for departure from that range because of Foreman's strong standing in her community and the great sense of shame and embarrassment she felt from her betrayal of her position in the community. In its calculation of the sentence range, however, the court allowed a two-level downward adjustment for "acceptance of responsibility." On January 23, 1989, the court sentenced her to 33 months in custody followed by three years of supervised release.

## DISCUSSION

Foreman was assessed a two-level upward adjustment for abuse of a position of trust "in a manner that significantly facilitated the commission or concealment of [her] offense." United States Sentencing Commission, *Guidelines Manual* § 3B1.3. Specifically, the district court found she abused a position of trust by showing her badge and police identification to the investigating officers during their initial questioning. She challenges this adjustment, claiming that the use of her police identification did not abuse her position of trust "in a manner that significantly facilitated" her crime.

The statute establishing appellate review of sentencing decisions under the Guidelines provides that the court of appeals "shall give *due deference* to the district court's application of the guidelines to the facts." 18 U.S.C.A. § 3742(e) (West Supp. 1989) (emphasis added); *accord United States v. Sanchez–Lopez*, 879 F.2d 541, 557 (9th Cir.1989).

This standard is intended to give the court of appeals flexibility in reviewing an application of a guideline standard that involves some subjectivity. The deference due a distirct [*sic* ] court's determination will depend upon the relationship of the facts found to the guidelines standard being applied. If the particular determination involved closely resembles a finding of fact, the court of appeals would apply a clearly erroneous test. As the determination approaches a purely legal determination, however, the court of appeals would review the determination more closely.

134 Cong.Rec. H11257 (daily ed. Oct. 21, 1988). This definition of "due deference" parallels the standard of review for mixed questions of law and fact we announced in *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). *United States v. Daughtrey*, 874 F.2d 213, 217–18 (4th Cir.1989) (citing *McConney* ).

If application of the rule of law to the facts requires an inquiry that is "essentially factual," one that is founded "on the application of the fact-finding tribunal's experience with the mainsprings of human conduct," ... the district court's determination should be classified as one of fact reviewable under the clearly erroneous standard. If, on the other hand, the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, ... the question should be classified as one of law and reviewed de novo.

*McConney*, 728 F.2d at 1202 (quoting *Commissioner v. Duberstein*, 363 U.S. 278, 289, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960)) (citations omitted).

■ In using the statutory due deference standard, we distinguish our recent statement in *United States v. Restrepo*, 884 F.2d 1294, 1295 (9th Cir.1989), that application of the Guidelines is reviewed de novo. In *Restrepo* we reviewed the district court's construction of the Guidelines themselves, clearly a question of law. We

therefore accorded no deference, the practical equivalent of de novo review, to the district court's interpretation. We construe *Restrepo*'s unmodified assertion that application of the Guidelines is reviewed de novo as applicable only to legal determinations of the Guideline's provisions.

■ Foreman raises both legal and factual issues. The legal issues are whether an abuse of a position of trust must implicate a special privilege accorded someone in that position and whether an upward adjustment under § 3B1.3 is proper for use of a position of trust in a manner that significantly facilitated the attempted concealment of that offense. We review the district court's legal interpretation of the Guidelines de novo. *See Restrepo*, 884 F.2d at 1295. The factual issue is whether Foreman's conduct significantly facilitated the concealment of her crime. We defer to the factual determinations made by the district court in the course of its application of the Guidelines unless they are clearly erroneous. *See United States v. Wills*, 881 F.2d 823, 827 (9th Cir.1989).

■ Section 3B1.3 states: "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." *Guidelines Manual*, § 3B1.3. Foreman argues that § 3B1.3 applies only to abuses of trust that involve use of a special privilege accorded someone in that position of trust. She claims that § 3B1.3 is therefore inapplicable to her because she did not abuse any special privilege accorded her as a police officer by showing her badge and police identification to the investigating officers. We find no merit in this argument. The adjustment in § 3B1.3 is for "abuse of a *position* of trust." The guideline does not expressly limit such abuse to special privileges ac-

corded to one with a position of trust, nor do we believe that such a limitation can be implied. More specifically, police officers are accorded public trust to enforce the law. The public, including fellow law enforcement agents, tend to trust that police officers will not violate the laws they are charged with enforcing. Foreman attempted to take advantage of that trust to conceal her criminal activity. We believe that this is precisely the type of situation contemplated by § 3B1.3 as an abuse of position of public trust.

■ Foreman also contends that any efforts on her part to use her position as a police officer to avoid investigation were unsuccessful and thus could not have "significantly facilitated" her crime. She claims that mere attempts to use a position of trust to significantly facilitate a crime do not come within the Guidelines and therefore do not justify the upward adjustment imposed here. While Foreman correctly asserts that the language of § 3B1.3 does not include "attempts," her focus on the success of her efforts, or lack thereof, is misplaced.

Initially we note that the language of § 3B1.3 does not require the abuse of a position of trust to result in the successful commission or concealment of the offense. Rather, § 3B1.3 requires only that the abuse of position of trust occur "in a manner that significantly *facilitated*" the crime (emphasis added). "Facilitate" is defined as "to make easier or less difficult." *Webster's Third New International Dictionary* 812 (1976). Thus, the guideline's use of the word "facilitated" implies that the drafters of this section intended it to apply to any abuse of a position of trust which significantly made it easier to commit or conceal a crime, regardless of the success of that abuse.[2]

---

2. The dissent claims that we ignore § 3B1.3's use of the term "significantly," which the dissent argues "plainly requires the sentencing judge to assess the *effect* of the abuse, and to determine whether the effect was of sufficient magnitude: it must have furthered the crime or concealment 'significantly.'" Dissent at 1341–1342 (emphasis in original). "Significantly," however, does not modify "commission or conceal-

ment," but modifies "facilitated." Thus, the inquiry is not the extent to which the abuse of trust *furthered* the crime or concealment, but whether the abuse made the crime significantly *easier* to commit or conceal.

The Commentary to the guideline is to the same effect. "The position of trust must have contributed in some substantial way *to facilitat-*

Before drawing such an implication, we recognize that the Sentencing Commission has specifically provided for attempts in other sections of the Guidelines. *See, e.g., Guidelines Manual* § 3C1.1 (providing an adjustment "[i]f the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice"). Under general principles of statutory construction, "[w]hen some statutory provisions expressly mention a requirement, the omission of that requirement from other statutory provisions implies that [the Commission] intended both the inclusion of the requirement *and* the exclusion of the requirement." *West Coast Truck Lines, Inc. v. Arcata Community Recycling Center, Inc.,* 846 F.2d 1239, 1244 (9th Cir.), *cert. denied,* 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988) (emphasis in original). Section 3B1.3's exclusion of any provision for attempts, therefore, would generally preclude the implication of such a provision in this guideline. In ascertaining the Commission's intent, however, "we strive to interpret language in one section of a statute consistently with the language of other sections and with the purposes of the entire statute considered as a whole." *Adams v. Howerton,* 673 F.2d 1036, 1040 (9th Cir.), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3494, 73 L.Ed.2d 1373 (1982). Refusing to allow for attempts in § 3B1.3 would be inconsistent with the Commission's overall Guidelines policy on attempts.

The Guidelines treat attempts that are not covered by a specific offense guideline the same as completed offenses when "the defendant completed all the acts the defendant believed necessary for successful completion of the offense or the circumstances demonstrate that the defendant was about to complete all such acts but for the apprehension or interruption by some similar event beyond the defendant's control." *Guidelines Manual* § 2X1.1(b)(1); *see id.* § 2F1.1 (Application Note 7) ("In keeping

with the Commission's policy on attempts, if a probable or intended loss that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss."). Here, Foreman completed all the acts she believed necessary to conceal her offense. Consistent with the Guidelines' position on attempts, therefore, her attempt to conceal her offense should be treated the same as a successful concealment. Abuse of a position of trust is not a substantive offense, but we believe the Guidelines' approach to attempts in general lends support to our interpretation of § 3B1.3.

The dissent argues that the Commission's policy on attempts is inapplicable in these circumstances because it "addresses only the determination of *base offense levels,* and says nothing about *adjustments.*" Dissent at 1343 (emphasis in original). Thus, according to the dissent, we improperly apply principles governing the *sort* of crime the defendant committed (established in Chapter Two of the Guidelines) to the harm caused by the *means* the defendant employed to commit the crime (established in Chapter Three).

The dissent misconstrues our decision. We do not interpret § 3B1.3 to include attempts *to facilitate* the crime. Rather, we believe the Commission intended to include facilitation of attempts *to conceal* the crime within the provisions of this guideline. In applying an adjustment for abuse of a position of trust, therefore, our inquiry is analogous to determining the proper offense level: we must assess the defendant's criminal culpability. "This adjustment applies to persons who abuse their positions of trust ... to facilitate significantly the commission or concealment of a crime. *Such persons generally are viewed as more culpable." Guidelines* § 3B1.3 (Background) (emphasis added). In the words of the dissent, we find "there is little

---

*ing* the crime and not merely have provided an opportunity that could *as easily* have been afforded to other persons." *Guidelines* § 3B1.3 (Application Note 1)(emphasis added). In the Commentary, as in the text of the guideline itself, the focus is on the extent to which the

abuse of trust contributed to the *ease* of the crime's commission or concealment. Neither the guideline nor the Commentary says anything about the extent to which the abuse of trust must contribute to the efficacy of the crime's commission or concealment.

difference in criminal culpability between one who [conceals] crime A and one who commits all the acts necessary to the [concealment] of a crime A but is unexpectedly foiled." Dissent at 1343 n. 4. Without deciding whether the Commission's policy on attempts applies to any other adjustment, we believe that policy applies to an abuse of a position of trust which significantly facilitated a defendant's attempt to conceal the crime with which he is charged. We hold, therefore, that § 3B1.3 may be read to provide an adjustment for abuse of position of trust that significantly facilitated the attempted concealment of the offense.

Foreman's final argument is that, as a factual matter, her conduct did not significantly facilitate her crime. She claims that she showed her badge in response to police questioning and had no intention of using it to deflect their investigation. The district court made the following findings and conclusions:

> The facts are that when defendant was first approached by the police at the Los Angeles Airport, she displayed her badge and police identification to the officers. Given the circumstances of the display of police identification and badge, the court is satisfied that the defendant then used her position as a police officer to attempt to dissuade the investigating officers from proceeding further with their investigation. This attempt was not successful. However, it was an abuse of the position of trust for the defendant to use her employment as a police officer to attempt to deflect the investigation of her, and thus attempt to escape responsibility for her criminal activity.

We interpret this language as a finding that Foreman's conduct significantly facilitated her attempt to conceal her offense. Foreman does not dispute the fact that she showed her badge to the investigating officers after they began questioning her. This action and the circumstances surrounding it lead to a strong inference that Foreman's conduct was intentional and that it significantly facilitated her attempt to conceal her crime, even though her efforts were ultimately unsuccessful. While we recognize that other inferences might be drawn from these same facts, the findings of the district court were not clearly erroneous.

### CONCLUSION

Abuse of a position of trust under § 3B1.3 is not limited to abuse of a special privilege accorded to one with a position of trust. Moreover, the enhancement provided in that section applies to an abuse of a position of trust that significantly facilitated the attempted concealment of the convicted offense. The district court, therefore, properly assessed a two-level upward adjustment in Foreman's sentence.

AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

In affirming the district court's two-level upward adjustment of Foreman's sentence, the majority enlarges the scope of section 3B1.3 far beyond anything the language of that provision can reasonably bear. I have expressed elsewhere my reservations about the restrictions which the Sentencing Guidelines place on the discretion of the sentencing judge. *United States v. Brady*, 895 F.2d 538, 544 (9th Cir.1990) (Reinhardt, J., concurring specially). Nevertheless, since we must apply the Guidelines, we should apply them as they are written. Because I cannot acquiesce in the strained interpretation rendered by the majority, I dissent.

I begin with the language of the applicable guideline:

> § 3B1.3. *Abuse of Position of Trust or Use of Special Skill*
>
> If the defendant abused a position of public or private trust, or used a special skill, *in a manner that significantly facilitated the commission or concealment of the offense,* increase by 2 levels. This adjustment may not be employed in addition to that provided for in § 3B1.1, nor may it be employed if an abuse of trust or skill is included in the base of-

fense level or specific offense characteristic.

United States Sentencing Commission, *Guidelines Manual,* § 3B1.3 (Nov. 1989) (emphasis added). The majority concedes that Foreman's offense was complete by the time she showed her badge, and that this section is applicable only if Foreman's act of identifying herself as a police officer constituted an abuse of a position of public trust, which "significantly facilitated the ... concealment of the offense." *Id.* (emphasis added).

The majority gives short shrift to Foreman's argument that her conduct was not an "abuse" of her position as an officer. Foreman suggests that section 3B1.3 applies only when the offender abuses a "special privilege" enjoyed by virtue of her position of public trust, and I can agree with the majority that this interpretation is unsatisfactory. Still, it must be conceded that section 3B1.3 applies to offenders who *abuse* positions of public trust; not merely to those who *occupy* such positions or even to those who *use* such positions. To abuse is "[t]o use improperly, to misuse; to make a bad use of, to pervert, or misemploy; to take a bad advantage of." *Oxford English Dictionary* 11 (Compact Ed.1971). This seems to me to require *something more* than merely responding to a request for identification in precisely the way in which police officers are expected to respond. In this case, the something more is intent: if we accept the district court's finding that Foreman flashed her badge in a conscious attempt to deflect suspicion and conceal her offense, then we must conclude that this attempt was an abuse, rather than merely a use, of her position of public trust.[1] However, I need not resolve the intent question because Foreman's conduct, whether or not it was an "abuse" of her

position, clearly did not satisfy the rest of section 3B1.3.

Section 3B1.3 does not permit or direct the sentencing judge to enhance the sentence of everyone who abuses a position of public trust. Instead, it provides for enhancement only if the defendant's abuse *"significantly facilitated* the ... concealment of the offense" (emphasis added). The majority notes that facilitating a crime or concealment means making it easier, not necessarily making it successful; that is true enough, as far as it goes. However, the majority then proceeds to commit several serious errors. First, it virtually ignores the word "significantly," which modifies "facilitated." On its face, this term plainly requires the sentencing judge to assess the *effect* of the abuse, and to determine whether that effect was of sufficient magnitude: it must have furthered the crime or concealment "significantly." Furthermore, the use of the past tense, *i.e.,* "facilitated," renders indisputable the proposition that the abuse must have actually had some effect. The abuse must have *significantly facilitated* (a matter of historical fact); it is not sufficient to say merely that the act in question constitutes the sort of act that, conceivably or in general, has a tendency to significantly facilitate.

The majority notes, as I do, that "significantly" modifies "facilitated" rather than "commission or concealment." Based upon this observation, the majority asserts that "the inquiry is not the extent to which the abuse of trust *furthered* the crime or concealment, but whether the abuse made the crime significantly *easier* to commit or conceal." *Ante,* at 1338 n. 2. I see no difference between these two inquiries, unless the majority believes that "furthered" connotes ultimate success in a way that "facili-

---

1. The district court reached this conclusion despite Foreman's uncontradicted representation at the sentencing hearing that she showed her badge only because it was on top of her driver's license in her wallet—precisely where she had been trained to keep it. This was an eminently reasonable explanation for her conduct, and I strongly suspect that nearly all police officers are trained to keep their badges in a similar location. It is also likely Foreman was trained to identify herself as a police officer on all occasions involving public contact with government officials, as well as on any occasions where contact with private citizens might lead to controversy or official action. We should not lightly infer an improper motive when an officer of the law merely follows orders.

tated" does not.[2] In any event, even taking the majority's preferred formulation as the authoritative version of the test, there is simply no conceivable argument that it was satisfied here. In this case Foreman's showing of her badge did not serve to make her crime easier to commit, nor did it have any practical effect upon her effort to conceal the offense. In fact, Foreman's actions had no practical effect whatsoever. Contrary to the majority's assertion, not even the district court found that her actions had any effect on the criminal activity involved,[3] and the majority provides no argument for adopting a different view of the facts on appeal.

Since the majority makes no argument whatsoever that Foreman's use of her police badge altered, let alone "significantly" altered, her situation in any way, the plain meaning of section 3B1.3 should foreclose any further inquiry and preclude any enhancement based upon this section. Only thus can we honor the venerable principle that if the language of a statute is clear, that language must ordinarily be given its plain meaning. *Immigration and Naturalization Service v. Cardoza–Fonseca*, 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987); *id.* at 452, 107 S.Ct. at 1223 (Scalia, J., concurring in the judgment) (citing *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95–96, 5 L.Ed. 37 (1820) (Marshall, C.J.); *United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 18 L.Ed. 830 (1868); *Bate Refrigerating Co. v. Sulzberger*, 157 U.S. 1, 34, 15 S.Ct. 508, 515, 39 L.Ed. 601 (1895) (Harlan, J.); *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 492, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947) (Jackson, J.); *United States v. Sullivan*, 332 U.S. 689, 693, 68 S.Ct. 331, 334, 92 L.Ed. 297 (1948) (Black, J.); *Unexcelled Chemical Corp. v. United States*, 345 U.S. 59, 64, 73 S.Ct. 580, 583, 97 L.Ed. 821 (1953) (Douglas, J.)).

Disregarding this rule, the majority looks past the unambiguous language of the statute in order to justify its rather odd "implication" that an unsuccessful effort to facilitate is the same as having "significantly facilitated," or is somehow included within the latter phrase. Here, the majority repeats its first error, this time misconstruing the most pertinent aid to construction of the guideline: the official Commentary that was *adopted* along with it. This Commentary, properly read, is devastating to my colleagues' construction. The degree of facilitation necessary for enhancement is virtually the only aspect of the "abuse of trust" portion of section 3B1.3 that receives any attention in the Application Notes that were adopted as part of the official Commentary—which should tell us something about the importance of this requirement. According to the Commentary, "[t]he position of trust must *have contributed in some substantial way* to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller." *Guidelines Manual* § 3B1.3, Commentary (Application Note 1) (emphasis added). This Commentary, like the guideline it amplifies, clearly calls for an inquiry into the *extent* to which the abuse of trust contributed—*actually* contributed—to the concealment of the offense. The majority settles instead for enhancement based upon an alleged bare and unsuccessful attempt to conceal, without any evaluation of efficacy. Yet an intent to use one's position to facilitate concealment is inherent in the very concept of "abuse"; the majority's approach gives no effect to the *further* requirement that the abuse have *significantly facilitated* or *substantially contributed* to the concealment. The phrase "in connection with" could be substituted for "in a manner that significantly facilitated" and the result, as the majority reads

---

**2.** Such a connotation is certainly unintended, and lacks objective support as well. To "further" is "[t]o help forward, assist (usually things, less frequently persons); to promote, favour (an

action or movement)." *Oxford English Dictionary* 1099 (Compact Ed.1971).

**3.** See note 6 *infra*.

the statute, would be identical in every case.

Having freed itself from the constraints not only of the guideline but also of the Commentary explaining it, the majority errs a third time by turning to guideline provisions not applicable here. Even if one wishes to overlook the inappropriateness of this excursion, it is difficult to fathom why the majority believes the authority it cites supports its selective construction of the statute. As the majority concedes, the fact that attempts are expressly covered by other sections of the Guidelines raises a presumption that attempts are covered when they are explicitly mentioned and not covered when they are not explicitly mentioned. *See Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983). Section 3C1.1, which appears on the very next page of the Guidelines Manual, provides for a two-level sentence enhancement "[i]f the defendant willfully impeded or obstructed, *or attempted to impede or obstruct* the administration of justice during the investigation or prosecution of the instant offense." *Guidelines Manual*, § 3C1.1 (emphasis added). Even if the language of section 3B1.3 were not as clear as it is, *Russello*'s rule of construction would oblige us to presume that Congress and the Sentencing Commission fully intended the omission from section 3B1.3 of any reference to "attempted facilitation," and thus to give effect to that intentional omission.

However, the majority rejects such a presumption in this case, adverting to "the Commission's overall Guidelines policy on attempts." *Ante*, at 1339. By this grand phrase is apparently signified section 2X1.-1, which appears in Chapter Two ("*Offense* Conduct"), Part X ("Other *Offenses*"), but the alleged generality of this section is open to serious question. Section 2X1.1, by its own terms, addresses only the determination of *base offense levels*, and says nothing about *adjustments*, which are the subject of Chapter Three.[4] Moreover, the Commentary to this "overall Guidelines policy" cites no fewer than thirteen specific provisions which preempt it by specifically providing for attempts. *Id.*, Commentary (Application Note 1). Each of the provisions mentioned is an "offense guideline"; the drafters apparently thought it unnecessary even to discuss "adjustment guidelines" on attempts because it is perfectly apparent from the face of section 2X1.1 that this so-called "overall Guidelines policy" has no application whatsoever to adjustments.[5]

In summary, the guideline applies only to an abuse of trust that significantly facilitated the concealment of a crime. No one could suggest that any such event occurred here.[6] All that happened is that Foreman

---

4. The base offense levels in Chapter Two are answers to the question, "What *sort* of crime did the defendant commit?" For this purpose, there is little difference in criminal culpability between one who commits crime A and one who commits all the acts necessary to the commission of a crime A but is unexpectedly foiled. In contrast stands Chapter Three, which deals with the harms caused by the means (usually not criminal by themselves) by which the crimes are actually committed. Enhancement is not generally specified for *attempting* to use means specified by Chapter Three because criminally culpable intent beyond that of the base offense can rarely (if ever) be inferred solely from a defendant's choice of means; *harm* rather than *intent* is the key in Chapter Three.

5. I note also that even if we could properly apply the "overall Guidelines policy on attempts" to adjustments, the results would be absurd. Consider, for instance, the effect upon § 3B1.1 ("Aggravating Role"), which provides for enhancement if the defendant was an orga-

nizer, leader, manager, or supervisor. Would the majority enhance the sentence of someone who *attempted* to organize, lead, manage, and supervise, but who was roundly rejected as an organizer, leader, etc., by all of the other participants? Could such a person have his sentenced enhanced on this ground and simultaneously *reduced* under § 3B1.2(a) on the ground that he *actually* turned out to be a "minimal participant" in the crime?

The majority evades these questions by declining to decide "whether the Commission's policy on attempts applies to any other adjustment." *Ante*, at 1339. But after the majority's misapplication of section 2X1.1 in this case, why should it not apply to others as well? What will stop it? My only hope in this regard is that future courts will see that the majority has suspended the ordinary rules of statutory construction and will limit its approach accordingly.

6. The majority, after creating, deleting, and rearranging various elements of the guideline, quotes from the district court's findings and

showed her badge in response to a request for identification from federal and local law enforcement agents whose suspicion she had aroused. Her doing so had absolutely no effect on subsequent occurrences. The investigating authorities were completely unimpressed and proceeded to question Foreman regarding the unusual bulge around her waist. The incredulous officers ignored her answer and asked to feel the bulge; when Foreman consented to this search, the narcotics were discovered and she was arrested.

Although Foreman's conduct clearly did not facilitate anything, the majority refuses to apply the plain meaning of the statute and instead creates a new and more expansive guideline, borrowing elements from other, inapplicable guidelines that the majority apparently feels should have been included here. The result is a guideline covering something called "attempted concealment," which was not covered before, and which the majority apparently believes is not subject to the clearly expressed statutory command that the sentencing judge assess the *efficacy* of the conduct in question by determining whether it *significantly facilitated* the concealment. Honesty, uniformity, and proportionality—the justifications which the Sentencing Commission advances for the Guidelines, *Guidelines Manual*, Ch. 1, Pt. A ("Introduction"), n. 3 ("The Basic Approach")—are not fostered by such an approach to the Commission's language. Accordingly, I dissent.

interprets the pertinent language "as a finding that Foreman's conduct significantly facilitated her attempt to conceal her offense." *Ante,* at 1340. This strikes me as an odd way to interpret the language the majority quotes. All the district court said was that Foreman "attempt[ed] to dissuade the investigating officers from proceeding further with their investigation. This attempt was not successful." Where in that statement, one might ask, could the majority possibly find anything to support the assertion that Foreman's conduct had any significant effect of any kind?

The majority apparently thinks this factual issue can be settled by acknowledging that while "other inferences might be drawn from these same facts, the findings of the district court were not clearly erroneous." *Ante,* at 1340. My contention, however, is not that the district court's finding of significant facilitation was clearly erroneous; it is rather that the district court made no such finding. The district judge plainly thought it was sufficient to find that Foreman *intended* to facilitate the concealment of her crime; he did not address the efficacy of Foreman's conduct at all.