**UNITED STATES of America,**
**Appellant,**

v.

**Robert J. McMILLEN.**

**No. 90–3079.**

United States Court of Appeals,
Third Circuit.

Argued June 21, 1990.

Decided Oct. 29, 1990.

Rehearing and Rehearing In Banc
Denied Nov. 28, 1990.

Thomas W. Corbett, Jr., U.S. Atty., Constance M. Bowden (argued), Asst. U.S. Atty., Bonnie R. Schlueter, Asst. U.S. Atty., Pittsburgh, Pa., for appellant.

Kim William Riester (argued), Scott, Vogrin & Riester, Pittsburgh, Pa., for appellee.

Before STAPLETON and GREENBERG, Circuit Judges, and POLLAK,* District Judge.

---

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

The United States appeals the sentence imposed on Robert J. McMillen under the United States Sentencing Guidelines (the "U.S.S.G."), following a guilty plea, for misapplication of funds by a Savings and Loan employee in violation of 18 U.S.C. § 657. The Government argues that the district court erred in not adjusting McMillen's sentence upward pursuant to U.S.S.G. § 3B1.3 because he abused a position of private trust in a manner that significantly facilitated the commission of the offense. We agree and will vacate the sentence and remand to the district court for further proceedings consistent with this opinion.

### I.

McMillen was indicted for misapplying the funds of the First Federal Savings and Loan Association in violation of 18 U.S.C. § 657. At all relevant times he was employed by the Savings and Loan Association as a branch manager. The indictment alleged that McMillen willfully misapplied funds by obtaining loans in the fictitious name of Edwin Thurmond. To collateralize the loans, McMillen issued a savings certificate in the name of Edwin Thurmond without the bank's receiving any consideration therefor. In addition, he opened a checking account, also in the name of Edwin Thurmond, and deposited the loan proceeds in that account. After completing the fraudulent loan applications, McMillen approved them himself as branch manager.

McMillen pled guilty to one count of misapplication of funds by a Savings and Loan employee. The district court, in applying the sentencing guidelines, found U.S.S.G. § 3B1.3 inapplicable. In the district court's view, McMillen was not employed in a position of trust; the opportunity to commit this crime was equally available to other employees, and McMillen's position as branch manager did not contribute in a substantial way to facilitating the commission of the crime. App. at 56–57. The court sentenced McMillen to a three-year term of probation. As a condition of the probation, the court ordered McMillen con-

fined to a Community Treatment Center for a period of thirty days to be followed by five months of home detention. The Government's timely appeal followed.

### II.

#### A. *Jurisdiction*

This Court has jurisdiction over the appeal pursuant to 28 U.S.C.A. § 1291 and 18 U.S.C.A. § 3742(b)(2).

#### B. *Standard of Review*

Congress has provided us with guidance concerning the appropriate standard for appellate review of a sentence under the Sentencing Guidelines. "The court of appeals ... shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). The relevant legislative history is also instructive.

> This standard of review is intended to give the court of appeals flexibility in reviewing an application of a guideline standard that involves some subjectivity. The deference due a district court's determination will depend upon the relationship of the facts found to the guidelines standard being applied. If a particular determination involved closely resembles a finding of fact, the court of appeals would apply a clearly erroneous test. As the determination approaches a purely legal determination, however, the court of appeals would review the determination more closely.

134 Cong.Rec. H11257 (daily ed. Oct. 21, 1988).

In our view, the case before us raises three separate categories of questions. The first, of course, is what authority McMillen had as branch manager and what he did in the course of committing this crime. These are questions of fact and the district court's answers to them are reviewable only for clear error. Fortunately, there appears to be no dispute with respect to these matters of fact although the

record is not as fully developed as it might be.

The second question is whether the authority possessed by McMillen as bank manager was such that he served in a "position of trust." While recognizing that the issue is not free from doubt,[1] we believe that this question is better characterized as an inquiry into the "interpretation of a guideline term." So characterized, it approaches a purely legal determination. *See United States v. Daughtrey,* 874 F.2d 213, 217 (4th Cir.1989). Accordingly, a standard approaching *de novo* review is appropriate.[2]

Whether McMillen abused his position in a way that substantially facilitated the commission or concealment of the crime is the final question. This determination more closely resembles a finding of fact and necessitates review under the clearly erroneous standard. *See United States v. Foreman,* 905 F.2d 1335, 1338 (9th Cir. 1990) (whether defendant's conduct significantly facilitated the concealment of her crime was a factual determination to which the court would defer unless clearly erroneous); *United States v. Ehrlich,* 902 F.2d 327, 330 (5th Cir.1990) (district court's determination that defendant used position of trust to facilitate the commission of her offenses was not clearly erroneous and would not be reversed).

### C. *Analysis*

■ U.S.S.G. § 3B1.3 requires the sentencing court to increase the offense level by two "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment

of the offense...." The defendant was a branch manager for the First Federal Savings and Loan Association. As a branch manager, McMillen was in a supervisory position and had the authority to approve loan applications, issue savings certificates, and sign bank documents without supervisory approval from other bank employees. Based on these undisputed facts, and without any further evidence reflecting material limitations on this authority, we believe the district court could only conclude that McMillen served in a "position of private trust" within the meaning of U.S.S.G. § 3B1.3.[3]

The remaining question is whether McMillen abused his position as branch manager "in a manner that significantly facilitated the commission or concealment of the offense...." The Application Notes of the Sentencing Guidelines elaborate: "The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller." Application Note to U.S.S.G. § 3B1.3. The district court found that McMillen's position as branch manager did not substantially contribute to the commission of the crime. App. at 57.

As this Court has noted, "[w]hile [the clearly erroneous] standard of review severely restricts our role, it does not extinguish it." *Ali v. Gibson,* 631 F.2d 1126, 1129 (3d Cir.1980), *cert. denied,* 449 U.S. 1129, 101 S.Ct. 951, 67 L.Ed.2d 117 (1981). The uncontradicted presentence report de-

---

**1.** *See, e.g., United States v. Drabek,* 905 F.2d 1304, 1305 (9th Cir.1990) (district court determination that defendant was in a position of trust is a "factual finding" subject to clearly erroneous standard of review).

**2.** We note that the district court, in its Memorandum of Sentencing Hearing and Report of Statement of Reasons, referred to the question of whether McMillen held a position of trust as a legal issue in dispute. Supp.App. at 7SA.

**3.** A more thorough record documenting the duties and powers of McMillen's position was

not developed because McMillen did not challenge in the district court the conclusion of the presentence report that he occupied a position of trust. To the contrary, at the sentencing hearing, McMillen's counsel asserted in no uncertain terms that McMillen did possess a position of trust. The government cannot be faulted for failing to develop more thorough support for an uncontested proposition. It was the sentencing judge at the close of the sentencing hearing that first raised the issue of whether McMillen served in a position of trust.

clared that "[c]onstruction and completion of the scheme was facilitated by virtue of [McMillen's] position as branch manager." Presentence Report, ¶ 7. McMillen did not challenge this declaration and, accordingly, there was no further record development on the point. We note that the district court adopted "all factual statements contained in the PSI" in its Memorandum of Sentencing Hearing and Report of Statement of Reasons. Supp.App. at 6SA. McMillen personally approved his own initial fraudulent loan application as well as subsequent applications to refinance the loan. His position as branch manager made it possible for him to take such actions. McMillen's own attorney stated that he could not have committed the crime had he not been branch manager.

A review of the record leaves us with "the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). McMillen abused his position of trust. As branch manager, he approved fraudulent loans to himself, created a false savings certificate to serve as collateral for the loans and opened a checking account in a fictitious name. His abuses contributed substantially to the facilitation of both the commission and concealment of the crime. The record simply does not support the district court's finding that "an ordinary bank teller" could have "embarked upon a reasonably similar scheme of embezzling the funds and covering it up so it would not have been detected."[4] App. at 56. We find that the district court committed clear error in holding that U.S.S.G. § 3B1.3 is not applicable to McMillen. We will vacate the sentence.

### III.

■ The defendant argues that because he has begun serving his sentence, the government's appeal violates the double jeopardy clause of the Constitution. In *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the Supreme Court addressed this argument in the context of 18 U.S.C. § 3576. That statute granted the United States the right to appeal the sentence imposed upon a "dangerous special offender." On appeal, the government sought the imposition of a more severe sentence upon a defendant who had begun serving his original sentence.

The Court rejected the defendant's argument that the double jeopardy clause of the fifth amendment barred the government's appeal.

> Although it might be argued that the defendant perceives the length of his sentence as finally determined when he begins to serve it, and that the trial judge should be prohibited from thereafter increasing the sentence, that argument has no force where, as in the dangerous special offender statute, Congress has specifically provided that the sentence is subject to appeal. Under such circumstances there can be no expectation of finality in the original sentence.

*Id.* at 139, 101 S.Ct. at 438.

*DiFrancesco* controls the case at bar. Congress provided the Government with the means to appeal an incorrect application of the Sentencing Guidelines when it amended 18 U.S.C. § 3742(b). *See United States v. Kane*, 876 F.2d 734, 735 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 173, 107 L.Ed.2d 130 (1989); *see also United States v. Rico*, 902 F.2d 1065, 1067 (2d

---

**4.** The record establishes the authority that McMillen had and the authority he abused in effectuating his scheme, (i.e., the authority to open accounts, grant loans, and commit the bank through the issuance of certificates of deposit). In applying the Guideline § 3B1.3 and its Commentary, the significant point is that McMillen's authority is not authority possessed by the hypothetical "ordinary bank teller" spoken of in Application Note 1. We do not think the Guideline calls upon the sentencing judge to take evidence concerning the authority ordinarily possessed by a bank teller. Nor do we think that the sentencing judge in this case needs to hear evidence on "the extent to which [the First Federal branch manager's] authority exceeds the authority of a First Federal teller." Dissent page 778. If the First Federal tellers have extraordinary authority, that fact would nevertheless be irrelevant to a correct application of the Guideline.

Cir.1990) (18 U.S.C. § 3742 "allows the government to appeal illegal sentences and to have such sentences corrected by the district court on remand"). Thus, like the defendant in *DiFrancesco*, McMillen "is charged with knowledge of the statute and its appeal provisions, and has no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired." 449 U.S. at 136, 101 S.Ct. at 437.[5] Accordingly, we find that the Government's timely appeal of McMillen's sentence does not implicate the prohibition against double jeopardy.[6]

We leave to the district court on remand the implementation of the new sentence pursuant to this opinion. We do note, however, the Supreme Court's admonition that "the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 718–19, 89 S.Ct. 2072, 2077, 23 L.Ed.2d 656 (1969). That requirement is equally applicable here.

## IV.

McMillen abused a position of private trust in a manner that significantly facilitated the commission and concealment of his crime. Therefore, § 3B1.3 of the Guidelines requires that his offense level be increased by two. This Court will va-

cate the original sentence and remand to the district court for further proceedings consistent with this opinion.

LOUIS H. POLLAK, District Judge:

I write separately because, in one respect, I disagree with the court's disposition of this appeal. I fully subscribe to the court's rejection, in Part III of its opinion, of appellee's argument that permitting the Government to appeal infringes on appellee's right to be protected from double jeopardy. Further, I agree that the sentence imposed by the district court should be vacated and the case remanded for further proceedings. What separates me from my colleagues is that I am not persuaded that, on this record, we can conclusively determine that defendant McMillen "abused a position of . . . private trust . . . in a manner that significantly facilitated the commission or concealment of the offense" (U.S.S.G. § 3B1.3)—with the result that defendant's offense level must be raised two levels.

It is the case that the presentence report found that McMillen occupied a position of trust and utilized that position to engage in the criminal conduct to which he pled guilty. The Government, at sentencing, concurred. Moreover—somewhat quixotically—defense counsel also concurred:

> defense counsel's attempt to concede that McMillen's role as bank manager was crucial to the consummation of his

---

5. *DiFrancesco* teaches that the defendant can have no expectation of finality of sentence until the government's statutory period for appeal has expired. Thus, McMillen's release from the community treatment center does not alter the analysis. While a defendant who has completely satisfied his sentence may have a reasonable expectation of finality as to the completed sentence, that is not the case at bar. *See United States v. Rico*, 902 F.2d 1065, 1068–69 (2d Cir. 1990).

6. To the extent the New Jersey Supreme Court's opinion in *State v. Ryan*, 86 N.J. 1, 429 A.2d 332 (1981) supports a different result, we respectfully disagree with that court's reading of *DiFrancesco*. *Ryan* distinguishes *DiFrancesco* on the grounds that *DiFrancesco* deals only with the finality of a sentence once pronounced, whereas *Ryan* "is concerned with whether a criminal sentence is final once the defendant has begun to serve it." 429 A.2d at 337. The majority of

the New Jersey Supreme Court appears to overlook the fact that DiFrancesco had begun serving his sentence when the government appealed. Furthermore, the court's assertion ignores the Court's statement in *DiFrancesco* that the argument that once a defendant begins to serve a sentence "the trial judge should be prohibited from thereafter increasing the sentence . . . has no force where . . . Congress has specifically provided that the sentence is subject to appeal." 449 U.S. at 139, 101 S.Ct. at 438.

The New Jersey Supreme Court additionally distinguishes *DiFrancesco* because the court found that Ryan, unlike DiFrancesco, did have a reasonable expectation of finality when he began serving his sentence. 429 A.2d at 336. As noted above, 18 U.S.C. § 3742(b) precludes McMillen from sharing Ryan's reasonable expectation of finality.

thefts appears to have been designed to bolster the defense argument that McMillen's offense level should not be raised two points for abuse of trust and *also* raised two points pursuant to U.S.S.G. § 2B1.1(b)(4), which calls for such an enhancement where the offense "involved more than minimal planning."

The district court rejected the defense argument that a defendant's offense level could not be increased both for "more than minimal planning" and for "abus[ing] a position of ... trust." But the district court found that McMillen, as a bank branch manager, had not in fact occupied a position of trust and that the position he did occupy did not "contribute in a substantial way to the commission of this crime." App. at 57. The district court's full exposition is as follows (App. at 56–7):

Finally, the Probation Officer has concluded that the defendant has maintained a position of trust and, therefore, an additional two points should be added. I agree with the United States that a person in a position of trust can engage in more than minimal planning. However, the Court finds as a fact in this case that the defendant was not employed in a position of trust. In my judgment the evidence preponderates that the defendant was in precisely the same position as a teller at the institution.

The teller at First Federal, if that person desired, could have embarked upon a reasonably similar scheme of embezzling the funds and covering it up so it would not have been detected. In our judgment, the notes attached to Section 3B1.3 are instructive. The notes provide the position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons.

We believe the opportunity to commit this crime was equally available to other employees of First Federal. In addition, a position of the defendant as Branch Manager did not, in our judgment, con-

tribute in a substantial way to facilitating the commission of this crime. The notes go on to add that this adjustment for position of trust, for example, would not apply to an embezzlement by an ordinary bank teller. We see no difference between the station in life of Mr. McMillen and an ordinary bank teller at First Federal Savings and Loan Association.

The ground on which my colleagues overturn the district court's determination is this:

As branch manager, he approved fraudulent loans to himself, created a false savings certificate to serve as collateral for the loans and opened a checking account in a fictitious name. His abuses contributed substantially to the facilitation of both the commission and concealment of the crime. The record simply does not support the district court's finding that "an ordinary bank teller" could have "embarked upon a reasonably similar scheme of embezzling the funds and covering it up so it would not have been detected." App. at 56. We find that the district court committed clear error in holding that U.S.S.G. § 3B1.3 is not applicable to McMillen.

I agree with my colleagues that "[t]he record ... does not support the district court's finding that 'an ordinary bank teller' could have 'embarked upon a reasonably similar scheme of embezzling the funds and covering it up so it would not have been detected.'" But the record also does not support a contrary finding. That is to say, nothing in the record addresses the question of what authority a First Federal branch manager has and the extent to which that authority exceeds the authority of a First Federal teller. Hunch may tell us that, for example, a branch manager has authority to approve a loan and a teller does not.[1] But hunch is not the same as proof. And, when the issue is one of enhancement of sentence, the burden of proof rests with the Government.

---

1. I use the word "hunch" advisedly. It does not appear that the authority of persons at interme-diate and lower levels of bank hierarchies would be a matter for judicial notice.

I do not suggest that the Government was, as an initial matter, obligated to prove at the sentencing hearing that McMillen had committed his crimes through abuse of a position of trust. When the sentencing hearing began, the Government was entitled to treat this as a non-issue, given that the presentence report had so found and the defense's pre-hearing submission had said "Defendant could not have engaged in these multiple acts of theft if he were not a bank manager." Position of the Defendant With Respect to Sentencing Factors, ¶ 2(b)(ii), App. at 18. But when the district court announced its finding that what branch manager McMillen did could as easily have been done by a teller, the Government should, so it seems to me, have asked the district court for an opportunity to make a factual demonstration that there were significant differences between McMillen's authority and a teller's authority and that those differences materially aided McMillen in carrying out these crimes. Such a request could have been made at the sentencing hearing or, by way of motion for reconsideration, promptly thereafter.

Instead, the Government elected to appeal. I do not say that the Government, by not moving in the district court, has waived its appeal. I do say that it is not the role of this court to decide, on a non-record, questions of fact and law which are, in the first instance, properly the province of the district court.

In short, I would vacate and remand, but give the district court the opportunity to reexamine the question of abuse of trust on an adequate factual record.[2]

---

**2.** Since this case is to be remanded for further proceeding, it may be appropriate to add that nothing in this opinion—and, nothing, as I read it, in the court's opinion—addresses two additional issues which the district court identified but found no necessity to reach. App. 55.