UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael CASTAGNET,
Defendant–Appellant.

No. 450, Docket 90–1380.

United States Court of Appeals,
Second Circuit.

Argued Nov. 28, 1990.

Decided June 6, 1991.

Emily Berger and Jonathan D. Polkes, Brooklyn, N.Y., Asst. U.S. Attys., E.D. N.Y., for plaintiff-appellee.

Henriette D. Hoffman, Legal Aid, New York City, for defendant-appellant.

Before ALTIMARI and MAHONEY, Circuit Judges, and GLASSER,* District Judge.

GLASSER, District Judge:

## Background

Mr. Castagnet was a junior station agent for Piedmont Airlines from February to June, 1987. In that capacity, Piedmont's computer access code was made known to him. That code made possible the issuance of flight tickets through Piedmont's computers. After his employment was terminated, Mr. Castagnet on numerous occasions entered Piedmont ticket counter areas either late at night or in the early morning hours when the counters were unmanned and utilizing the Piedmont code accessed the computer and issued tickets to himself. He traveled to various parts of the United States and to British Columbia. He traded tickets at other airports for tickets on other airlines or for cash. On one day, November 24, 1987, he issued ten tickets to himself which had a total face value of $23,050.

Mr. Castagnet was arrested in Portland, Oregon on November 25, 1987 where, using the assumed name of "Michael Christian," he attempted to trade a Piedmont ticket for that of another airline.

Following his release he was again arrested on February 13, 1988 in Colorado Springs, Colorado when he attempted to use a ticket he obtained in exchange for a Piedmont ticket which had been issued on November 24, 1987 at LaGuardia Airport in New York. At sentencing, the parties stipulated that the total loss to Piedmont was $50,518. The only issue on appeal is whether the district court properly enhanced the guideline sentence calculation by two points pursuant to U.S.S.G.

§ 3B1.3. For the reasons which follow, we hold that he did and therefore affirm the judgment of the district court.

## Discussion

### A. Standard of Review.

The standard of review by which a court of appeals is to be guided is provided in 18 U.S.C. § 3742(e) as follows:

Upon review of the record, the court of appeals shall determine whether the sentence

(1) was imposed in violation of law; [or]

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

\* \* \* \* \* \*

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

As is not infrequently the case, the statutory standard is easy to state but not always easy to apply as is evidenced by the divergent views of the parties. The government contends that the standard to be applied is whether the district court's determination was clearly erroneous. The appellant contends that this court should review that determination de novo. We believe that in this case the de novo standard is the correct one.

A review of the decided cases which have commented on the question reveals an inconsistency in the application of the standard, due perhaps, in part, to the difficulty in differentiating questions of fact from questions of law and from mixed questions of law and fact. A sampling of judicial comments upon this question is illustrative. In *United States v. Foreman*, 905 F.2d 1335, 1337 (9th Cir.1990), the court wrote:

---

* Honorable I. Leo Glasser, United States District Judge for the Eastern District of New York, sitting by designation.

The statute establishing appellate review of sentencing decisions under the Guidelines provides that the court of appeals "shall give *due deference* to the district court's application of the guidelines to the facts." ...

This standard is intended to give the court of appeals flexibility in reviewing an application of a guideline standard that involves some subjectivity. The deference due a distirct [sic] court's determination will depend upon the relationship of the facts found to the guidelines standard being applied. If the particular determination involved closely resembles a finding of fact, the court of appeals would apply a clearly erroneous test. As the determination approaches a purely legal determination, however, the court of appeals would review the determination more closely....

This definition of "due deference" parallels the standard of review for mixed questions of law and fact we announced in *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *United States v. Daughtrey,* 874 F.2d 213, 217–18 (4th Cir.1989) (citing *McConney* ).

If application of the rule of law to the facts requires an inquiry that is "essentially factual," one that is founded "on the application of the fact-finding tribunal's experience with mainsprings of human conduct," ... the district court's determination should be classified as one of fact reviewable under the clearly erroneous standard. If, on the other hand, the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, ... the question should be classified as one of law and reviewed de novo.

Following that exegesis, the court continued:

Foreman raises both legal and factual issues. The legal issues are whether an abuse of a position of trust must implicate a special privilege accorded someone in that position and whether an upward adjustment under § 3B1.3 is proper for use of a position of trust in a manner that significantly facilitated the attempted concealment of that offense. We review the district court's legal interpretation of the Guidelines de novo.... The factual issue is whether Foreman's conduct significantly facilitated the concealment of her crime. We defer to the factual determinations made by the district court in the course of its application of the Guidelines unless they are clearly erroneous.

*Id.* at 1338.

A reference to one more case will suffice, perhaps, to illustrate the difficulty. In *United States v. Ehrlich,* 902 F.2d 327, 330 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 788, 112 L.Ed.2d 851 (1991), the court held that

[a] district court's application of § 3B1.3 is a sophisticated factual determination that will be affirmed unless clearly erroneous.... The district court found that "there is sufficient evidence to indicate that the defendant did maintain a position of private trust and abused that position in a manner that significantly facilitated the commission of the offense."

*See also United States v. Stroud,* 893 F.2d 504, 506–07 (2d Cir.1990); *United States v. Wright,* 873 F.2d 437, 443–44 (1st Cir.1989).

The significant facts in this case are not in dispute. The question whether an interpretation of the guideline embraces those facts is, in our view, a legal question which we review *de novo.* We would add, however, that were we to have adopted the clearly erroneous standard, the result would be the same.

B. *The Guideline*

U.S.S.G. § 3B1.3 provides in part:

If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an

abuse of trust or skill is included in the base offense level or specific offense characteristic.

The Application Notes are:

1. The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller.

2. "Special skill" refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts.

*Background:* This adjustment applies to persons who abuse their positions of trust or their special skills to facilitate significantly the commission or concealment of a crime. Such persons generally are viewed as more culpable.

The appellant contends that the 2 level enhancement was erroneous because (1) his status was equivalent to "an ordinary bank teller"; (2) having no longer been employed by Piedmont when he wrongfully accessed the computer there was no relationship of trust between them which he abused; and (3) the ability to access the computer is not a "special skill" within the meaning of the guideline.

### Breach of Trust

■ Research has disclosed a surprising paucity of cases concerning this aspect of the guideline and those provide no sure touchstone. In *United States v. Lange,* 918 F.2d 707 (8th Cir.1990), the defendant was a mail handler with the United States Postal Service who dealt with express and certified mail one day a week. He was arrested when postal inspectors confirmed that cash was missing from express and certified mail on the days that Lange handled it. Rejecting the argument that the defendant's thefts were like "embezzlement by an ordinary bank teller" the court held that postal employees in general did not have the same opportunity as Lange to steal from this type of mail which was especially sensitive and probably more likely to contain things of value than ordinary mail. *Id.* at 710. In *United States v. McMillen,* 917 F.2d 773 (3rd Cir.1990), the defendant was a branch manager of a bank who misapplied funds by obtaining loans in fictitious names after approving the fraudulent loan applications in his capacity as branch manager. The court held that the district court erred in holding that U.S.S.G. § 3B1.3 is not applicable. The same result on facts which are not significantly different was reached in this circuit in *United States v. McElroy,* 910 F.2d 1016 (2d Cir. 1990) (in which the court applied the abuse of discretion standard). In *United States v. Ehrlich, supra,* the defendant was employed by a bank as a loan clerk whose duty it was to balance loans, that is, to verify at the end of each day that the loan system totals balanced with general ledger account totals. It was revealed that the defendant unlawfully transferred funds from the bank's general ledger accounts to her own checking account. The district court's application of § 3B1.3 was affirmed. The court concluded that the defendant's position of trust gave her specialized knowledge of the electronic data system that few other employees shared and gave her the authority to routinely initiate loan balancing transactions which facilitated her embezzlement. In reaching its conclusion, the court applied the clearly erroneous standard of review.

Two cases held that the guideline sentence was properly enhanced pursuant to § 3B1.3 when a police officer abused his position of trust to facilitate the commission and concealment of a crime. *United States v. Ruiz,* 905 F.2d 499 (1st Cir.1990); *United States v. Foreman,* 905 F.2d 1335 (9th Cir.1990). And in *United States v. Parker,* 903 F.2d 91 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990) the court affirmed the application of § 3B1.3 to the sentence of a defendant who, in his capacity as a security guard substantially facilitated the commission of a payroll robbery, holding that the

district court did not abuse its discretion in doing so.

Three cases considered the application of § 3B1.3 to fact patterns that, it may be assumed, were not within the contemplation of the Sentencing Commission. In *United States v. Zamarripa*, 905 F.2d 337 (10th Cir.1990) the court considered whether a babysitter abused his position of trust when he sexually violated the child he was attending. It decided that he did and that his base offense level was properly enhanced for that reason. In *United States v. Drabeck*, 905 F.2d 1304 (9th Cir.1990), *reh'g granted*, 915 F.2d 1404 (9th Cir.1990) (en banc) the defendant was employed by a janitorial service which had a cleaning contract with a bank. He had the keys to the bank and frequently worked there unsupervised when the bank was otherwise closed. He stole $6,300 from the bank vault. The court held that the defendant was in a position of trust which differed from that of a bank teller because, holding the keys to the bank, he had access to it and its assets at a time and under circumstances that tellers did not share and that § 3B1.3 was applicable to him. In the course of its opinion the court said:

Additionally, we are somewhat at a loss to understand why the Sentencing Commission believes that an ordinary bank teller who embezzles should not receive the enhancement. Unlike many other Guideline sections, the section on embezzlement does not already include abuse of trust in the specific offense characteristic, nor does it specifically mention in its Commentary whether section 3B1.3 applies.

There are cases suggesting that the fact that the defendant-teller is in a position of trust may already be an element of the offense of embezzlement (and thus included in the base offense level) and the Commission may have refused in their Commentary to enhance an embezzlement sentence for that reason.

*Id.* at 1306 (footnotes omitted).

The court concluded:

Finally, we point out that the Commentary to the Sentencing Guidelines is not binding law, rather it is only advisory commentary to assist the court in the application of the statute.... Thus even if a logical extension of the Application Note regarding ordinary bank tellers would prevent our finding that Drabeck was in a position of private trust, we are not bound by that.

*Id.* at 1307.

In *United States v. Hill*, 915 F.2d 502 (9th Cir.1990) the defendant, an employee-driver of an interstate carrier picked up household goods and personal possessions of five military families in Kansas and Missouri for transportation to Texas where they would eventually be shipped abroad. En route, the defendant sold some of the household items and destroyed personal possessions. The issue was whether the district court erred in upwardly adjusting the base offense level for abuse of a position of trust. Addressing the standard of review at the outset, the court said:

What is the appropriate standard of review? It is axiomatic that legal issues are reviewed *de novo* and factual questions are reviewed for clear error.... We have consistently held that a district court's application of the guidelines is reviewed *de novo*.... These principles, however, do not necessarily resolve the issue; whether a district court has made a factual determination, a legal conclusion, or both, can sometimes be difficult to discern in a Sentencing Guidelines case.

*Id.* at 505.

The court concluded that the question whether the truck driver was in a position of trust vis-a-vis the owners of the household goods was a legal issue reviewable *de novo*. Reviewing cases such as *Ehrlich* and *McMillen, supra*, the court discerned the touchstones that guide the determination as to whether § 3B1.3 is applicable to the case at hand to be as follows:

A simple principle emerges from these assorted authorities: the primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the free-

dom to commit a difficult-to-detect wrong....

[I]f one party is able to take criminal advantage of the relationship without fear of ready or quick notice by the second party, the second party has clearly placed a level of trust in the first.

\*     \*     \*     \*     \*     \*

A second indicium of freedom to commit a difficult-to-detect wrong is the ease with which the [defendant's] activities can be observed....

If one has placed a defendant in a position to commit a crime and leave the area before the crime will be discovered, the defendant will generally be in a position of trust.

*United States v. Hill,* 915 F.2d at 506 (footnote omitted).

Applying those criteria to the facts before it, the court concluded that the defendant abused a position of trust and that the enhancement in the base offense level was correct. The application of those criteria to the facts of this case would dictate a similar conclusion.

The legislative history of 18 U.S.C. § 3742(e) states, in part, that the

standard of review is intended to give the court of appeals flexibility in reviewing an application of a guideline standard that involves some subjectivity.

134 Cong.Rec. H11257 (daily ed. Oct. 21, 1988).

■ The "subjectivity" to which that legislative history makes reference perhaps supplies the thread which weaves its way through the cases alluded to above. For the purpose of § 3B1.3 whether the defendant was in a position of trust must be viewed from the perspective of the victim. *United States v. Hill,* 915 F.2d 502, 506 n. 3 (9th Cir.1990). From that perspective, the fact that this defendant was not employed by Piedmont when he utilized the Piedmont code to access its computers loses its significance. *See, e.g., 5 Scott on Trusts* § 505 (3rd ed. 1967). The relationship that existed between this defendant and Piedmont provided the ability to commit the crime; he was able to take criminal advantage of that relationship without fear of ready notice by Piedmont and he committed the crime under circumstances which enabled him to be unobserved and leave the area before it was discovered. The "simple principle" suggested by *Hill* to embrace the "assorted authorities" on § 3B1.3 thus embraces this case as well.

■ Having concluded that the defendant occupied a position of trust, it remains to be determined whether he abused that position "in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. An enhancement of the base offense level is not warranted if the position of trust "merely ... provided an opportunity that could as easily have been afforded to other persons." *Id.* (Application Note 1). The Appellant's Brief, at page 11, suggests this to be the case here. The suggestion is not persuasive. The court in *United States v. Hill, supra,* considered that argument and rejected it as follows:

By characterizing the argument in terms of an opportunity afforded "to any other truck driver" rather than "to other persons," Hill begs the very question to be answered.... Rather, the question is whether Hill, relative to all people in a position to conspire to steal goods from interstate commerce ... was in a superior position as a result of a trust relationship.

*Id.* at 507–08. Mr. Castagnet was plainly in such a superior position.

Concluding that the district court correctly enhanced the base offense level for the reason that Castagnet abused a trust, there is no need to consider whether his facility with the computer was alternatively a special skill.

MAHONEY, Circuit Judge, concurring:

I am in complete agreement with Judge Glasser's thorough and thoughtful opinion, except for its conclusion that we review the issue whether Castagnet abused a trust *de novo.* 18 U.S.C. § 3742(e) (1988) was amended in 1988 to specify that reviewing courts shall "give due deference to the district court's application of the guidelines

to the facts." Since this case calls for the application of U.S.S.G. § 3B1.3 to undisputed facts, "the question of what is the standard of appellate review is answered by relatively explicit statutory command." *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988).

Accordingly, I believe our review in this case should be on a "due deference," rather than *de novo,* basis, consistent with our recent ruling in *United States v. Young,* 932 F.2d 1035, 1036 (2d Cir.1991) (reviewing U.S.S.G. § 3B1.3 determination). Under either standard, I agree with Judge Glasser that affirmance is in order.

ALTIMARI, Circuit Judge, dissenting:

I respectfully dissent from the majority's opinion. The majority concludes that Castagnet's position as a junior station agent is a position of trust pursuant to United States Sentencing Guidelines § 3B1.3. I disagree.

According to the commentary accompanying § 3B1.3, a two point upward adjustment is warranted for abuse of a position of trust if "[t]he position of trust ... contributed in some substantial way to facilitating the crime and not merely ... provided an opportunity that could as easily have been afforded to other persons." Commentary to the Guidelines Manual, Section 3B1.3 Application Note 1. In attempting to define the parameters of position of trust, the commentary asserts: "This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller." *Id.* Simply stated, I do not believe that Castagnet's position falls within this description. Castagnet was a junior station agent who was required to use a computer to process reservations and issue tickets. In essence, Castagnet's position allowed him to distribute merchandise in return for payments. Accordingly, I cannot find that in this capacity Castagnet was endowed with more trust or responsibility than an ordinary bank teller.

I believe that the proper test for determining whether an individual maintains a position of trust is that formulated by the Ninth Circuit in *United States v. Hill,* 915 F.2d 502 (9th Cir.1990). Under this test, an employee would not be in a position of trust if: (1) "there is a simple, objective method for determining whether [the employee] has embezzled funds"; and (2) it is easy for management to survey the employee's actions. *Id.* at 505. Applying this test to the case at bar, it seems evident that Castagnet should not be considered to hold a position of trust. Upon balancing its ledger for each period, Piedmont could have easily determined whether various ticket agents had improperly issued tickets. Indeed, before Castagnet committed the offense for which he was convicted, Piedmont had discovered that Castagnet had been improperly issuing himself airline tickets and had dismissed him as an employee. Clearly then, Piedmont had objective methods for concluding whether junior ticket agents had embezzled funds, as well as an adequate opportunity to oversee these agents' actions.

Although the majority does not address whether an upward adjustment is warranted under the second prong of § 3B1.3—use of a special skill—I find that an upward adjustment on this basis would also be unjustified. The Application Notes to § 3B1.3 provide: " 'Special skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." Commentary to the Guidelines Manual, Section 3B1.3 Application Note 2. The district court concluded that in learning how to access Piedmont's computer, Castagnet acquired a "job related skill that did in fact require training." In this age of computers, however, it is difficult to categorize the ability to access a computer as a special skill. Presumably a company can teach a new employee to operate its computers within a few days or even hours. Indeed, it would distort the meaning of § 3B1.3 to determine that basic computer operation requires the same training and education as the other positions enumerated in the Application Note.

For the reasons set forth, I would vacate Castagnet's sentence and remand the case to the district court for resentencing.