**UNITED STATES of America, Plaintiff,**

v.

**Andrea MUXLOW, Defendant.**

**Crim. A. No. 89–CR–20059.**

United States District Court,
E.D. Michigan, S.D.

March 26, 1991.

William Richards, Detroit, Mich., for plaintiff.

Leroy Soles, Detroit, Mich., for defendant.

### OPINION AND ORDER REJECTING RULE 11 PLEA AGREEMENT

ROSEN, District Judge.

FACTS:

Pursuant to a Rule 11 plea agreement, the Defendant, Andrea Lynn Muxlow, has pleaded guilty to one count of distribution of cocaine, a Schedule II narcotic controlled

substance, in violation of 21 U.S.C. § 841(a)(1). The plea agreement provides that the maximum term of imprisonment shall not exceed 30 months.

At the time of the offense, Muxlow was a Port Sanilac, Michigan police officer. According to the presentence report, Sanilac County law enforcement officers received information that Muxlow was involved in drug trafficking. As a result of this information, undercover officers with the Michigan State Police made some initial contacts with Muxlow to test her willingness to engage in drug transactions. These initial attempts failed, however, allegedly because Muxlow suspected their true identity.

In late August, 1989, an informant approached a sergeant of the Sanilac County Sheriff Drug Task Force and told the sergeant that he had recently talked with Muxlow and that Muxlow had expressed her willingness to participate in an upcoming drug deal. The sergeant, after conferring with the county prosecutor, instructed the informant how to proceed with future conversations with Muxlow. The informant later met again with Muxlow and told her that the informant's cocaine supplier would be coming to town within the next day or two. Muxlow offered to help the informant by stopping the supplier while she was on patrol. She offered to pull the supplier's car over and seize the cocaine from his car. She would then tell the supplier to leave town, but would not arrest him. Next, she would deliver the cocaine to the informant in exchange for $1,500. The informant and Muxlow agreed to these terms.

The informant reported the results of this conversation with Muxlow to the Sanilac County sergeant and his fellow officers. They agreed to have a Drug Enforcement Officer pose as the supplier. They would have the DEA officer drive to the location in Port Sanilac previously agreed upon by Muxlow and the informant, carrying five ounces of cocaine. The informant would tell Muxlow of the "supplier's" intended route into Port Sanilac and what kind of car he would be driving. The informant would also meet Muxlow after she stopped the supplier so the informant and Muxlow could make their exchange. The Sanilac County sergeant and his team would be waiting at that location to observe the transaction.

On September 1, 1989, the transaction took place as planned. At about 8:30 p.m., Muxlow, while on patrol in full police uniform, pulled up next to the DEA agent's vehicle and instructed him to get out of the car. She then searched the car and found the cocaine mixture. Muxlow told the undercover agent that "this is a small town and we don't like this in our town," referring to the discovered cocaine. The DEA agent said that he had borrowed the car from a friend and was unaware of the cocaine. Muxlow told him that she would take care of the cocaine by dumping it out, and she told the agent to leave the area.

Muxlow then took the cocaine to the prearranged rendez-vous with the informant near the Bindicator Corporation, in Port Sanilac. Muxlow then followed the informant, in separate cars, to the marina area in Port Sanilac where they made their exchange: Muxlow gave the informant the cocaine in exchange for $1,500. This exchange was observed by officers of the Sanilac County Sheriff's office and DEA officials from their nearby vantage point. After the exchange, Muxlow and the informant went back to their respective cars and drove off. Within minutes, Muxlow's car was stopped, and she was arrested, possessing the $1,500 in marked bills.

All through these events on September 1, 1989, Muxlow was on duty and in uniform as a police officer and carried a loaded handgun on her person.

## DISCUSSION

The presentence report indicates an appropriate Guidelines Sentence range of 33–41 months. Thus, the minimum required sentence under the Guidelines would exceed, by three months, the Rule 11 plea agreement's maximum sentence of 30 months.

The 33–41 month range was arrived at by, among other factors, adding 2 levels to the base offense level, pursuant to Guideline 2D1.1(b)(1), because Muxlow was

carrying a firearm during the offense. Another 2 levels were added, pursuant to Guideline 3B1.3, because Muxlow committed the offense while on duty as a law-enforcement officer and that role enabled her to commit the offense.

Both Muxlow and the government argue that it would be inappropriate to add to the offense level based upon Muxlow's possession of the handgun while she committed the offense. They argue that, since the handgun constitutes part of Muxlow's uniform as a police officer, and Guideline 3B1.3 has already taken into account the fact that Muxlow committed the offense as a police-officer, adding to the offense level because of the handgun would essentially punish her twice for being a police officer.

The government, in a supplemental memorandum, also argues that, because this was a completely "controlled" buy, Muxlow's possession of the gun did not enhance the danger level of her conduct.

In *United States v. Ruiz*, 905 F.2d 499 (1st Cir.1990), the Court of Appeals for the First Circuit upheld the same sort of multiple enhancement of the sentence of a Lawrence, Massachusetts police officer who, in exchange for small quantities of cocaine, allowed several individuals to carry on their drug-trafficking activities without police interference. The *Ruiz* defendant further provided the drug traffickers with confidential police information regarding likely informants and impending raids. On other occasions, the defendant provided the traffickers with police escort when a particularly large drug delivery was involved. Since Ruiz was a police officer, like Muxlow in the instant case, his uniform mandated that he wear a handgun, so he necessarily carried the handgun while he committed the offenses for which he was convicted. As in the instant case, Ruiz' base offense level was raised 2 levels for possessing the handgun, and another 2 points for his role as a police officer. *Id.*, at 507.

On appeal, Ruiz challenged the elevation of his base offense level, pursuant to Guideline 2D1.1(b)(1), as a result of his possession of the handgun. As in the instant case, Ruiz argued that the handgun was merely part of his uniform, and, therefore, Guideline 2D1.1(b)(1) did not justify an increase in the offense level. The court rejected this argument.

*2. The Firearm Enhancement.* Ruiz challenges the district court's elevation of the BOL pursuant to U.S.S.G. § 2D1.1(b)(1) because a firearm was possessed during commission of the drug offense. *The Sentencing Commission has advised judges to make the adjustment if a firearm or other dangerous weapon was present during the crime's commission "unless it is clearly improbable that the weapon was connected with the offense." Id.* (commentary). We, and other courts, have accepted that advice according to its tenor. *See, e.g., [United States v. Mocciola*, 891 F.2d 13, 17 (1st Cir.1989) ]; *United States v. Otero*, 868 F.2d 1412, 1414 (5th Cir.1989). *In this case, Ruiz argues that the connection between the weapon and the offense was far too tenuous since he lawfully carried the firearm incidental to his vocation as a police officer rather than as a means of facilitating his avocation as a criminal.*

We cannot say the district court's finding in this respect was clearly wrong. *Mere possession of a firearm can trigger the two level increase; there is no requirement that the gun actually be used in perpetrating the drug crime, or that such use be intended. See, e.g., United States v. Green*, 889 F.2d 187, 189 (8th Cir.1989) (increase upheld when unloaded handgun discovered in apartment where defendant conducted drug transactions); *United States v. Burke*, 888 F.2d 862, 869 (D.C.Cir.1989) (so long as possession proven, no requirement to prove that defendant would have used weapon to advance commission of drug offense); *[United States v. Paulino*, 887 F.2d 358, 360 (1st Cir.1989) ] (same; pistol was in bureau drawer in room where cocaine concealed); *United States v. Restrepo*, 884 F.2d 1294, 1295–1296 (9th Cir. 1989) (same; automatic pistol hidden in mattress in stash house); *United States v. Holland*, 884 F.2d 354 (8th Cir.) (same;

pistol found in briefcase along with drug paraphernalia), *cert. denied,* —— U.S. ——, 110 S.Ct. 552, 107 L.Ed.2d 549 (1989); *United States v. Hewin,* 877 F.2d 3, 5 (5th Cir.1989) (same; pistol in back seat of car carrying marijuana in trunk).

*Here, the weapon was closely linked to the very powers and office which appellant used to implement his felonious activities. The knowledge that Ruiz carried a gun quite probably instilled confidence in those who relied upon him for protection in exchange for drugs, and fear in those who dealt with his suppliers. The fact that Ruiz was compelled to carry the gun by virtue of his employment was, of course, to be considered—but that fact alone does not make it "clearly improbable" that the weapon was connected with the drug offenses.*

*Id.,* at 507–508 (emphasis added).

As the Court understands the parties' argument here, they contend both: 1) that the fact that Muxlow was required to carry her weapon as part of her uniform as a police officer renders it "clearly improbable" that the handgun was connected with the drug distribution offense to which she pleaded guilty; and 2) even if Muxlow's possession of the weapon were connected to the drug offense, possession of the weapon is already subsumed in the 2–level increase required by Guideline 3B1.3.

As to the first argument, the Court agrees with, and adopts, the reasoning of the *Ruiz* court. Although Muxlow would have carried the handgun even if she had not committed the drug offense, the converse is unlikely. If she did not have the handgun as part of her uniform as a police officer, the Court believes she might well not have ventured into such a high risk circumstance as to stop a suspected drug dealer and confiscate the drugs. Similarly, it is unlikely that she would have distributed a substantial quantity of cocaine to the informant without the confidence that possession of the handgun undoubtedly instilled in her. Therefore, the Court concludes that Muxlow's possession of the handgun was connected to the drug offense, and the

2–level increase in Muxlow's base offense level is warranted pursuant to Guideline 2D1.1(b)(1).

To carve out a special exception to Guideline 2D1.1(b)(1) for police officers who carry weapons as part of their uniform would, in effect, place them at an advantage over civil criminals who cannot rely on such a pretext for carrying weapons in connection with their illegal drug activities. Such discrimination would violate what this Court views as the primary objective of Guideline sentencing—uniform sentencing.

■ Further, the Court does not agree with the parties there is any overlap between Guidelines 2D1.1(b)(1) and 3B1.3, which would render the 2–level increase required by Guideline 2D1.1(b)(1) impermissible "double counting." U.S.S.G. § 3B1.3 provides:

> § 3B1.3 *Abuse of Position of Trust or Use of Special Skill*
>
> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. *This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic.* If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under § 3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role).

U.S.S.G. § 3B1.3 (emphasis added).

Muxlow interprets the emphasized portion of the Guideline to mean that the 2-level increase required by 3B1.3 cannot be used in the instant case because her position as a police officer has already been considered when the Court applied the 2-level increase for her possession of the handgun pursuant to 2D1.1(b)(1). However, the courts that have interpreted this language in 3B1.3 have universally held that the offense level must be increased 2 levels under 3B1.3 unless the base offense

level or specific offense characteristic *necessarily* includes abuse of public trust. *United States v. Lange,* 918 F.2d 707, 710 (8th Cir.1990) (although statutory definition of mail theft included breach of public trust, sentencing court erred in failing to apply 2-level increase because neither base offense level nor specific characteristics included breach of trust); *United States v. McElroy,* 910 F.2d 1016, 1027–1028 (2d Cir. 1990) (since abuse of trust is not *necessarily* a part of the base offense of willful misapplication of bank funds, district court properly added 2 levels to base offense level pursuant to 3B1.3 in case where particular defendants breached trust); *United States v. Dailey,* 920 F.2d 937 (9th Cir. 1990) (same); *United States v. Hatch,* 926 F.2d 387 (5th Cir.1991) (abuse of trust is not necessarily included in § 5K2.7 specific offense characteristic: interference with governmental function).

Applying this reasoning to the instant case, it is clear that abuse of public trust is not inherent in the specific offense characteristic set out in U.S.S.G. 2D1.1(b)(1)—possession of a dangerous weapon during the commission of a drug offense. Although some defendants, such as Muxlow, possess the weapon in conjunction with their breach of the public trust, some do not. Conversely, while Muxlow carried a weapon during her drug offense, other persons may breach the public trust without carrying a weapon. Thus, increasing Muxlow's offense level twice—2 levels for breaching the public trust and 2 more levels for possessing the handgun—does not constitute double counting.

Muxlow's conduct in the instant case demonstrates why 2D1.1(b)(1) and 3B1.3 justify two independent 2-level increases in her offense level. It is clear that her handgun facilitated her "rolling" the suspected drug supplier; without the weapon, she might well have lacked the confidence to commit what essentially amounted to armed robbery. Her abuse of her trusted position as a police officer *further* facilitated her crime because the suspected supplier would less likely question the propriety of her seizing the drugs, considering that she was a uniformed police officer. Conse-

quently, both Muxlow's abuse of her public trust and her possession of the handgun independently facilitated the commission of the drug offense in the instant case. The Court concludes that the Guidelines require two separate 2-level increases in the offense level.

■ Finally, the Court addresses the government's supplemental argument that Muxlow's possession of the handgun in this particular case did not actually cause an "increased danger of violence" because both the DEA agent acting as the "supplier," from whom Muxlow obtained the cocaine, and the government agent to whom Muxlow sold the cocaine were within the control of the government. Thus, according to the government, no matter what Muxlow might have thought, her possession of the handgun during these drug transactions did not *actually* increase the danger of violence.

In making this argument, the government relies on U.S.S.G. § 2D1.1 comment, n. 3, which says:

3. Definitions of "firearm" and "dangerous weapon" are found in the Commentary to § 1B1.1 (Application Instructions). The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet. The enhancement also applies to offenses that reference § 2D1.2, 2D1.4, 2D1.5. The adjustment is to be applied even if several counts are involved and the weapon was present in any of them.

Although the government's argument has some superficial appeal, the Court believes it is inconsistent with the intent of § 2D1.1(b)(1) and the above-quoted commentary, as well as the Sixth Circuit's application of § 2D1.1(b)(1) and the

above-quoted commentary. Nothing in § 2D1.1(b)(1) or the commentary suggests that the weapons must have actually been used in the commission of a drug offense or that the defendant's possession of the weapons created an immediate or actual physical danger. Thus, in *United States v. McGhee*, 882 F.2d 1095 (6th Cir.1989), the Sixth Circuit stated:

> The transcript of the sentencing hearing shows that while the firearms were hidden in such a way as to be inaccessible to a stranger or casual visitor, they would be readily accessible to anyone who knew their location. And even if they were not readily accessible, nothing in § 2D1.1(b) of the guidelines, or the accompanying commentary, says that firearms have to be readily accessible to be "connected" with the drug offense.

*Id.*, at 1099 (weapons were hidden in secret wall compartments, under the floorboards, and in a secret safe in the defendant's bedroom).

Similarly, in *United States v. Snyder*, 913 F.2d 300 (6th Cir.1990), the court upheld a 2-level increase pursuant to 2D1.-1(b)(1) when a search of the defendant's home revealed two handguns in the defendant's bedroom nightstand. The court in *Snyder* stated:

> Snyder argues that the mere presence of firearms in his bedroom nightstand does not rise to the level of "possess[ion] during commission of the offense" as contemplated by Guidelines § 2D1.1(b)(1). Specifically, Snyder maintains that application note 3 to section 2D.1(b)(1) precludes a two-level enhancement in his case.... Essentially arguing that his two handguns "are more akin to a confined and unloaded hunting rifle rather than a drug-trafficker's arsenal," Snyder maintains that it was "clearly improbable" that the handguns discovered during the search of his residence were connected to his drug offense.
>
> Though Snyder argues that he never used the handguns during his criminal activities, *the government need only show Snyder's constructive possession of the firearms to warrant a section*

*2D1.1(b) adjustment.* Constructive possession of an item is the "ownership, dominion, or control" over the item itself, "'or dominion over the premises.'" where the item is located.... "The fact that a gun is located in a room that is not the center of drug transactions does not preclude the possibility that a drug dealer intended to use it to support his operations.... The key is always whether the placement of the gun or guns suggests that they would be quickly available for use in an emergency." [quoting *United States v. Lyman*, 892 F.2d 751, 754 n. 4 (8th Cir.1989)]. "[I]n applying § 2D1.1(b)(1), the court need not find a *connection* between the firearm and the offense. If it finds that the defendant *possessed* the weapon during the commission of the offense, the enhancement is appropriate." ...

> Because the two handguns could have facilitated Snyder's illegal cocaine transactions, it is not "clearly improbable" that the firearms were connected to the drug offense. Accordingly, the district court's application of section 2D1.1(b)(1) is not clearly erroneous.

*Id.*, at 303–304 (emphasis added) (citations omitted).

More recently, the Ninth Circuit has applied the 2D1.1(b)(1) enhancement so broadly that it affirmed a 2-level increase where the defendant was convicted of a single drug transaction and the weapons were located at his home some 15 miles away. *United States v. Stewart*, 926 F.2d 899 (9th Cir.1991).

In the face of these authorities, this Court is unable to conclude that either § 2D1.1(b)(1) or the accompanying commentary implies any sort of preliminary requirement that the handgun possessed by Muxlow during the commission of the drug offense constituted an immediate or actual threat of physical danger. However, even if such a requirement were present, the Court would conclude that Muxlow's handgun did at least pose a potential danger. The government argues that the gun posed no threat based upon the supposition that the DEA agent and the

government informant were themselves unlikely to instigate any violence. However, this argument ignores the possibility that Muxlow might have discovered the government agents' true identity and used her weapon as a means of escape. The presentence report itself indicates that Muxlow had previously doubted the identity of an undercover agent of the Michigan State Police and even attempted to engage him in a sexual encounter to test his identity.

Since all agree that Muxlow directly possessed a loaded handgun during the commission of this offense, and the Court finds that it is not "clearly improbable" that the handgun was connected to the offense, § 2D1.1(b)(1) requires a 2-level increase of the offense level. Similarly, the parties do not dispute that, absent the 2-level increase mandated by § 2D1.1(b)(1), Muxlow's offense level should be increased by 2 levels under 3B1.3 because she abused the public trust in committing the offense. *See United ed States v. Foreman*, 905 F.2d 1335, 1338–1339 (9th Cir.1990). The Court therefore concludes that the base offense level must be increased an additional 2 levels pursuant to 3B1.3. As noted in the presentence report, with these adjustments, the applicable Guidelines sentence for Muxlow is 33–40 months. Because the Rule 11 plea agreement provides for a maximum sentence of 30 months, the Court rejects the plea agreement, and Muxlow is entitled to withdraw her guilty plea.

For these reasons, and the Court being otherwise fully advised in the premises;

NOW THEREFORE;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Rule 11 Plea Agreement is rejected. The Defendant may accordingly withdraw her guilty plea.