**UNITED STATES of America, Appellee,**

v.

**Abdul Karim SHYLLON, A/K/A
A.K. Shyllon, Appellant.**

No. 91–3219.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 17, 1993.

Decided Nov. 30, 1993.

Robert M. Hausman, Washington, DC (appointed by the Court) argued the cause and filed the brief, for appellant.

G. Bradley Weinsheimer, Asst. U.S. Atty., Washington, DC, argued the cause, for appellee. With him on the brief were J. Ramsey Johnson, U.S. Atty., John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., Washington, DC.

Before: EDWARDS, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Appellant Abdul Karim Shyllon appeals from a judgment of conviction for extortion and mail fraud, in violation of 18 U.S.C. §§ 1951 and 1341. Shyllon argues that the verdict was invalid for ambiguity, that his Sixth Amendment rights were violated, and that his sentence was based upon an inappropriate offense level and included improper "abuse of trust" and "vulnerable victim" enhancements. Because we find no merit in appellant's claims, we affirm.

## I. BACKGROUND

Before his arrest, Shyllon was a tax auditor for the District of Columbia. He was responsible for selecting and auditing businesses for compliance with local tax laws. Shyllon was indicted in 1991 and charged

with extortion and mail fraud. The extortion charge was premised on an asserted violation of the Hobbs Act, which prohibits extortion "by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The Government alleged that Shyllon had intimidated four small business owners and succeeded in extorting payments from some of them by threatening audits and fines.

At trial, Shyllon claimed that a Government investigator had intimidated the alleged victims into testifying against him; he attempted to elicit the testimony of Jhebre Tessamichael to prove this. Shyllon sought to show that the investigator had threatened Tessamichael with prosecution if he did not testify against Shyllon. The District Court refused to allow Shyllon to call Tessamichael, and Shyllon's counsel was barred from cross-examining the investigator about Tessamichael. The trial court held that the proffered testimony was not relevant to the alleged intimidation of the four victim-witnesses who were central to the Government's case.

When the case was submitted to the jury, the District Court instructed that the Government had alleged extortion by either economic harm or under color of official right. The court instructed the jury that conviction required unanimous agreement on at least one theory of extortion. The jury then returned a guilty verdict. In imposing an 87–month sentence of imprisonment for four of the counts, the District Court used a base offense level of 18 under U.S.S.G. § 2B3.2 and included, among other elements, a vulnerable victim enhancement of two levels (U.S.S.G. § 3A1.1) and a two-level abuse of trust enhancement (U.S.S.G. § 3B1.3).

## II. VERDICT AMBIGUITY

Shyllon claims the jury was required to specify whether it found his extortion to be by force or under color of official right, for the character of the extortion might affect the length of his sentence. Extortion by force carries a base offense level of 18, while extortion under color of official right results in a base offense level of 10. U.S.S.G. §§ 2B3.2 and comment. (n. 3), 2C1.1.

Since the District Court issued a special unanimity instruction, we may assume that the jury came to unanimous agreement on at least one theory of extortion. Either theory was sufficient to convict Shyllon. It is not necessary for the verdict to contain precise information upon which to base an offense level under the Sentencing Guidelines, since the trial judge may independently consider evidence of relevant conduct in setting the offense level. U.S.S.G. § 1B1.3(a). Therefore, the verdict below was valid. The unanimity instruction preserved the validity of the conviction, and the relevant conduct provision of the Guidelines preserved the validity of the sentence.

## III. CONFRONTATION CLAUSE

Shyllon also argues that the District Court violated his Sixth Amendment rights by refusing to allow him to call Tessamichael and by denying his counsel an opportunity to fully cross-examine the investigator. The Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." "The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*" *Delaware v. Van Arsdall,* 475 U.S. 673, 678, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) (citation omitted) (emphasis in original).

The District Court erred here. Federal Rule of Evidence 401 states that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence need not "prove every fact necessary to prove the issue. If it be an appropriate link in the chain of proof, that is enough." *McCandless v. United States,* 298 U.S. 342, 346, 56 S.Ct. 764, 766, 80 L.Ed. 1205 (1936).

The Supreme Court has recognized that evidence concerning government-induced witness bias is admissible. In *Van Arsdall,* the Court held that it was improper to prohibit all inquiry into the potential bias of a witness who had had separate pending criminal charges dismissed by the Government. 475 U.S. at 684, 106 S.Ct. at 1438. And in this

case, the Government does not attempt to defend the exclusion on the basis of Federal Rule of Evidence 403 (permitting exclusion where the probative value of relevant evidence is outweighed by other factors, such as its cumulative character), and we do not address this possibility.

Surely testimony that the investigator had intimidated Tessamichael bears on the probability that he had also intimidated the Government's witnesses. Shyllon was not required to proffer evidence which would relate directly to relationships between the investigator and the government witnesses. Thus, the *McCandless* rule allowing incremental proof clearly seems to require the admission of evidence of the sort that Shyllon sought to elicit from Tessamichael.

█ Nevertheless, the District Court's error in excluding this testimony was harmless. There is overwhelming *direct* evidence supporting Shyllon's conviction. All four of the victim-witnesses testified about Shyllon's threats to audit or fine the businesses and his attempts to extort money. One of the business owners even contacted the FBI himself, touching off the investigation which led to Shyllon's arrest. It is not plausible that the alleged coercion would have tainted that witness' testimony. In sum, there is enough cumulative evidence available to withstand the allegations of taint that Shyllon would make. *See McCandless*, 298 U.S. at 684, 56 S.Ct. at 1438 (holding that cumulative evidence may make error harmless). Therefore, we have no basis upon which to disturb the ruling of the District Court.

## IV. SENTENCING

### A. *Offense Level*

Shyllon makes three objections to his sentence calculation. First, he argues that the District Court chose the wrong base offense level. The court applied U.S.S.G. § 2B3.2, "Extortion by Force or Threat of Injury or Serious Damage." This section mandates a base offense level of 18. Shyllon argues that the court should have applied U.S.S.G. § 2C1.1, which covers "Extortion Under Color of Official Right" and only calls for a base offense level of 10.

The higher offense level is appropriate. Application Note 3 to section 2B3.2 explains that bribe solicitation by public officials is covered by section 2C1.1, "unless there is use of force or a threat that qualifies for treatment under this section." Application Note 2 to section 2B3.2 lists the threats that require the higher base offense level, and includes those which "reasonably could be interpreted as [threats] to drive an enterprise out of business."

█ The District Court found that Shyllon threatened to put his victims out of business, therefore meriting the higher offense level. Whether Shyllon did make this threat is a factual issue and thus reviewable only for clear error. *United States v. Barry*, 938 F.2d 1327, 1332 (D.C.Cir.1991). On the record before us, there was enough evidence for the trial court to conclude that a preponderance showed that Shyllon did threaten closure. At least two witnesses testified that he did. Therefore, the District Court did not err in using section 2B3.2.

### B. *Abuse of Trust Enhancement*

Shyllon's second argument regarding his sentence is that the District Court erred in imposing a two-level abuse of trust enhancement under U.S.S.G. § 3B1.3. The section requires enhancement "[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or facilitation of the offense." Application Note 1 to the section explains that

[t]he position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons.

(November 1992 version.) Shyllon argues that he lacked the discretion necessary to enjoy a position of trust, since his audit decisions and deficiency calculations had to be approved by his supervisors.

█ We have previously noted that "the amount of supervision is not strictly a function of the degree of trust placed in the employee." *United States v. Smaw*, 993 F.2d 902, 905 (D.C.Cir.1993). Recently, the

Tenth Circuit elaborated on this issue in a helpful way, holding that the following factors must be considered to determine whether a particular position constitutes a position of trust:

> The extent to which the position provides the freedom to commit a difficult-to-detect wrong, and whether an abuse could be simply or readily noticed; defendant's duties as compared to those of other employees; defendants' level of specialized knowledge; defendant's level of authority in the position; and the level of public trust.

*United States v. Queen,* 4 F.3d 925, 928–29 (10th Cir.1993) (citation omitted).

■ Using this test, which we embrace, we conclude that the District Court did not err in imposing the enhancement. Though Shyllon probably did not have the professional discretion he would need to carry out his threats, he did enjoy the unsupervised freedom necessary to approach his victims and make threats that might sound plausible.

Shyllon asserts that the abuse of trust enhancement can be applied only when the victim has placed his trust in the defendant, which he asserts is not the case here. This is a curious argument, because nothing in the language of section 3B1.3 or its Application Notes appear to require any "trust" other than that of the party or entity entrusting the offender with some special discretion. We note, however, that two courts of appeals have suggested that, "[f]or purposes of Section 3B1.3, a position of trust, if any, must be established from the perspective of the victim." *United States v. Hill,* 915 F.2d 502, 506 n. 3 (9th Cir.1990); *United States v. Castagnet,* 936 F.2d 57, 62 (2d Cir.1991) (citing *Hill*). It is far from clear that these decisions mean to say that the enhancement can be applied *only* when a victim subjectively has "placed his trust" in the defendant, meaning that an identified victim believed that the defendant would do the victim no harm. Indeed, in another case, *United States v. Foreman,* 905 F.2d 1335 (9th Cir. 1990), the Ninth Circuit upheld a section 3B1.3 enhancement where a drug dealing police officer showed investigating police officers her badge in an effort to prevent their investigation. In so holding, the court never

purported to analyze a relationship of trust between the defendant and any particular victim. Rather, the court noted that

> police officers are accorded a public trust to enforce the law. The public, including fellow law enforcement agents, tend to trust that police officers will not violate the laws they are charged with enforcing. Foreman attempted to take advantage of that trust to conceal her criminal activity.

*Id.* at 1338. *See also United States v. Rehal,* 940 F.2d 1, 5 (1st Cir.1991) (court upheld a section 3B1.3 enhancement because the defendant used his knowledge as a police officer to alert his coconspirator of a DEA investigation and to conceal his activities in a cocaine distribution scheme).

■ The requirement that the victim subjectively "trust" the defendant might make some sense when the enhancement is for abuse of private trust. We need not decide this question, however, for it is clear that the Sentencing Guidelines also allow enhancement for abuse of *public trust.* In a situation of public trust, the victim and the entity granting the trust need not be the same. A public entity can place its trust in the defendant, and the defendant can use that trust to harm a victim who may not trust the defendant at all. *See United States v. Butt,* 955 F.2d 77, 89–90 (1st Cir.1992) (police officer abused public trust by extorting money from prostitutes).

■ In this case, Shyllon used his position in the government to facilitate the commission of his crime. He obtained important information that assisted him in committing the crime. He showed several of the defendants his government identification in order to convince them that he could carry out his threats or keep his promises. One of the victims went to the District of Columbia Department of Finance and Revenue to examine his tax records. Upon learning that Shyllon had his file, the victim concluded that he could not elude Shyllon. Shyllon's position of public trust significantly assisted his efforts to commit the crime. The government trusted him to do his job honestly, and he abused that trust in harming his victims.

■ Finally, Shyllon argues that imposing the enhancement would be contrary to the sense of the Guidelines. Since the of-

**6**

fense level for extortion by threat is higher than that for extortion under color of official right, Shyllon argues that the higher level implicitly includes the elements of the lower and that an abuse of trust enhancement would duplicate the included official right element. This argument is incorrect, for the higher offense level can also apply to individuals who are not in official positions. Therefore, the enhancement is still appropriate.

*C. Vulnerable Victim Enhancement*

Shyllon's final objection to his sentence is that the District Court erred in imposing a vulnerable victim enhancement. U.S.S.G. § 3A1.1 requires the enhancement if "the defendant knew or should have known that [the victim] was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct."

The Government argues that the enhancement was appropriate because the victims were somewhat unfamiliar with the English language and tax enforcement in the United States. Shyllon argues that although the victims were all foreignborn, the fact that they had operated businesses in this country for many years, had some higher education in this country, and used lawyers at least occasionally showed that they were not vulnerable.

Following the lead of other circuits, we review the District Court's decision on this point for clear error. *See, e.g., United States v. Rocha,* 916 F.2d 219, 244 (5th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991) (using clear error standard); *United States v. Smith,* 930 F.2d 1450, 1455 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991) (same). There is sufficient evidence to support the enhancement here.

## V. CONCLUSION

On the record before us, we can find no merit in the appellant's claims. Accordingly, the District Court's judgment is

*Affirmed.*